UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RONEY MAYS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>AIG PROPERTY CASUALTY COMPANY, et al.,<br><br>    Defendants. | Case No. 2:23-cv-12394<br><br>Honorable Robert J. White |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT (ECF No. 34)**

Before the Court is Defendant State Farm Fire and Casualty Company's motion for summary judgment. The parties fully briefed the motion. For the following reasons, the Court will grant in part and deny in part the motion.[1]

---

[1] The Court does not believe oral argument is necessary to resolve the issues in dispute and will decide the motion absent a hearing. *See Himes v. United States*, 645 F.3d 771, 784 (6th Cir. 2011) ("Rule 56 does not require an oral hearing on a motion for summary judgment.").

I.     **Background**

    A.     **Factual history**

Defendant State Farm Fire and Casualty Company (State Farm) issued a homeowner insurance policy (the Policy) to Plaintiffs Roney and Tammy Mays, a husband and wife. (ECF No. 1-1, PageID.9; ECF No. 34-1, PageID.323). The Policy insured a property located at 23911 Sargant Avenue, Southfield, Michigan 49033 (the Property). (ECF No. 1-1, PageID.9–10). After Plaintiffs obtained the Policy, a fire broke out at the Property. (ECF No. 34-1, PageID.341, 349–51). The fire damaged a detached garage on the Property and its contents. (*Id.*). Plaintiffs submitted a claim to State Farm for the damage. (ECF No. 1-1, PageID.10). After State Farm denied the claim, Plaintiffs initiated this lawsuit. (*Id.* at PageID.11–14; ECF No. 34-1, PageID.606).

State Farm moved for summary judgment. (ECF No. 34). It claimed that the Court should grant summary judgment and dismiss the Complaint in its entirety as to State Farm because (1) Mr. Mays' false statements during the claim investigation void the Policy and preclude Plaintiffs from recovery; (2) the Policy excludes the garage from coverage because Mr. Mays used it for business purposes; and (3) the Policy limits recovery for business-related property. (ECF No. 34, PageID.296). Plaintiffs asked the Court to deny the motion. (ECF No. 36).

II. **Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To defeat a summary judgment motion, the non-moving party "must come forward with specific facts showing that there is a *genuine issue for trial.*" *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  A genuine, triable issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When analyzing the motion, the Court "must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

III. **Analysis**

    A. **A Reasonable Jury Could Find that Mr. Mays' Alleged Misrepresentations Did Not Void the Policy.**

The Court will deny summary judgment on the grounds that the Policy is void. To support its argument, State Farm claimed the Policy's "Concealment or Fraud" condition applies here.  The condition reads: "**Concealment or Fraud.**  This policy is void as to *you* and any other *insured* if *you* or any other *insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance

3

relating to this insurance, whether before or after a loss." (ECF No. 34-1, PageID.764). According to State Farm, Mr. Mays "intentionally concealed or misrepresented" his employment and income from State Farm during the claim investigation process. (ECF No. 34, PageID.302). The alleged misrepresentations are material because: (1) State Farm believes the fire was set intentionally and Mr. Mays' income is relevant to motive and (2) the misrepresentations bear directly on the ownership, possession, and use of the lost property. (ECF No. 34, PageID.303). Plaintiffs contested the alleged falsity of the representations and their materiality to the investigation. (ECF No. 36, PageID. 825–29). Ultimately, the Court finds Plaintiffs established a genuine issue of fact as to the characterizations.

To start, Michigan law mandates that each fire insurance policy issued in the state contain the following provision: "That the policy may be void on the basis of misrepresentation, fraud, or concealment." Mich. Comp. Law § 500.2833(1)(c). The Concealment or Fraud condition in the Policy satisfies that requirement. Although the statute does not speak to whether the misrepresentation can occur after the contract's procurement, Michigan courts recognize the validity of such provisions in homeowner insurance policies. *See Martin v. Farm Bureau Gen. Ins. Co. of Mich.*, No. 275261, 2008 WL 1807940, *3 (Mich. Ct. App. Apr. 22, 2008); *see also McKellar v. State Farm Fire and Casualty Co.*, No. 14-cv-13730, 2016 WL 304759,

4

\*9 (E.D. Mich. Jan. 26, 2016) (noting Michigan courts consistently uphold fraud provisions like the one here) (collecting cases).

To effectuate the Concealment or Fraud provision, "[State Farm] must prove that the claim was (1) knowingly false or made in reckless disregard for the truth, and (2) material, such that [Mr. Mays] intended to induce [State Farm] to act upon it." *Meat Town Inc. v. Sentinel Ins. Co.*, 852 Fed. App'x 925, 927 (6th Cir. 2021) (applying Michigan law).  Here, the Policy language further provides that the misrepresentation must concern a "material fact or circumstance relating to this insurance." (ECF No. 34-1, PageID.764).  The Court finds a material dispute of fact exists as to whether Mr. Mays' statements about his income and employment during the claim investigation could void the Policy.

First, it is not clear from the facts that Mays knowingly misrepresented his income or employment.  Mr. Mays submitted to an examination under oath (EUO) as part of the claim investigation process. (ECF No. 34-1, PageID.315–86).  State Farm claimed that during Mr. Mays' EUO, Mr. Mays represented he was "solely employed by RV Patrick Construction" and earned approximately "$20,000 to $30,000" from his role annually. (ECF No. 34, PageID.302).  Although Mr. Mays stated he had no other "jobs," he stated, in the same sentence, that he would "do auction and go auction hopping and stuff." (ECF No. 34-1, PageID.325).  As part of his auction hopping, he bought "[c]ars and gold and collectible stuff, equipment"

5

and earned a variable amount each year from his efforts, with an estimated range of $40,000. (*Id.* at PageID.325–26).  Mr. Mays' EUO testimony is at odds with State Farm's argument that Mr. Mays misrepresented his work and sources of income.  A reasonable jury viewing that testimony could certainly conclude that Mr. Mays did not conceal any pertinent information.

      Mr. Mays' EUO took place in January 2023; Mr. Mays' testimony at his December 2024 deposition again confirmed his primary income came from his auction resale, or "upselling,"[2] business. (*Id.* at PageID.478–79).  During his deposition, Mr. Mays quantified a bad year of upselling as generating $30,000-40,000 in profits and a good year as $60,000-70,000 in profits. (*Id.* at PageID.479). The only inconsistency related to Mr. Mays' testimony comes from Mr. Mays' interrogatory responses, where he failed to list upselling as a source of income. (*Id.* at PageID.389).  But viewing all the facts in the light most favorable to Plaintiffs, that omission alone does not conclusively establish a violation of the Concealment or Fraud policy.  Mays partook in the EUO before responding to the interrogatories, so State Farm knew that he engaged in upselling and made most of his income that way.  State Farm's presumed knowledge mitigates the harm from the omission.

---

[2] Mr. Mays' upselling is business is not limited to purchasing and reselling items from auctions, but also from estate sales, social media marketplaces, and other sources. (ECF No. 34-1, PageID.472–78).  The essence of his business is purchasing goods secondhand and then selling them for higher prices. (*Id.*).

Second, the Court is not convinced that statements about Mays' income or employment are indisputably material. State Farm needed to show that Mr. Mays intended State Farm to act on his statements. *See Meat Town* 852 Fed. App'x at 927. But "[g]enerally, whether the insured had intent to defraud is a question for the jury." *Mattern v. United Servs. Auto. Assoc.*, No. 366670, 2024 WL 4578822, *5 (Mich. Ct. App. Oct. 24, 2024). Statements about Mr. Mays' income do not relate to the items identified as lost in his claim. And the Policy offers no guidance that income qualifies as a "fact or circumstance relating to this insurance." (ECF No. 34-1, PageID.754). Because a reasonable juror could conclude that statements unconnected to the items lost are immaterial, summary judgment is inappropriate.

Likewise, Mr. Mays' EUO testimony establishes a triable issue of fact as to whether his statements about employment are material to State Farm's investigation of the garage. In addition to his testimony about his upselling business, Mr. Mays testified that he stored car parts and tools for the business in the garage and that his insurance policy likely limited recovery to $1,000 or $1,5000 on those items. (ECF No. 34-1, PageID.351, 358). Given the context of his statements, the Court can reasonably infer that Mr. Mays understood his car parts and equipment as subject to the Policy's "Special Limits of Liability" for items used in a business. (*Id.* at PageID.740). Overall, State Farm had enough information about Mr. Mays upselling business to inquire further about how it might relate to the garage. As a result, a jury

7

could find that Mr. Mays did not mislead the investigation. Thus, the Court will therefore deny State Farm's request for summary judgment that the Policy is void.

> B. A Triable Issue Remains as to Whether the Policy Excludes Coverage for the Garage.

The Court will deny summary judgment for State Farm that the Policy excludes coverage for Plaintiffs' garage. "Like any other contract, an insurance policy is an agreement between the parties." *Tenneco Inc. v. Amerisure Mut. Ins. Co.*, 281 Mich. App. 429, 444 (2008). "When interpreting an insurance contract, courts apply the same contract construction principles that govern any other type of contract." *Brown Jug, Inc. v. Cincinnati Ins. Co.*, 27 F.4th 398, 402 (6th Cir. 2022). "Any clause in an insurance policy is valid as long as it is clear, unambiguous, and not in contravention of public policy." *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567 (1992) (citation omitted) (citation modified).

State Farm argued that even if Plaintiffs did not void the Policy through their violative conduct, the Policy still excludes the garage from coverage. (ECF No. 34, PageID.305–06). Coverage A of the Policy pertains to the garage. It insures "other structures" on the Property beyond the dwelling.[3] (ECF No. 34-1, PageID.739).

---

[3] The Policy defines the "dwelling" as "the *building structure* on the *residence premises* used as the primary private residence." (ECF No. 34-1, PageID.736).

8

Coverage A excludes, however, other structures "used either completely or in part for ***business*** purposes," subject to certain exceptions inapplicable here. (*Id.*).

The Policy defines "business" as "any full-time or part-time activity, trade, profession, employment, or occupation . . . of an economic nature." (*Id.* at PageID.736). It does not matter if the business "is continuous or regular, is a secondary or supplemental source of income, or is an ***insured's*** principal means of livelihood. Profit and profit motive are irrelevant." (*Id.*). The term "business" does not include "incidental and infrequent personal economic activity such as a hobby . . . " (*Id.*).

Although the Policy defines "business," it does not define the term "business purpose." The Court will therefore interpret the phrase's meaning through a combination of the Policy's definition of "business" and the common meaning of "purpose." *Wells Fargo Bank, NA v. Cherryland Mall Ltd. P'ship*, 295 Mich. App. 99, 115 (2011) (interpreting undefined contract terms according to their "commonly used meaning") (citation omitted). Black's Law Dictionary defines "purpose" as "[a]n objective, goal, or end; specif., the business activity that a corporation is chartered to engage in." (12 ed. 2024). For the garage to fall within the Policy's exclusion, then, Mr. Mays must have used it for his upselling objectives, goals, or ends.

9

According to Plaintiffs, Mr. Mays used the garage to fix-up cars. (ECF No. 36, PageID.831). Mr. Mays fixed up cars as a hobby and not for his business. (*Id.* at PageID.831–32). And Mr. Mays limited his business use of the garage to storing car parts and other occasional items. (*Id.*).

Overall, the evidence presented by both parties is mixed as to whether Mr. Mays used the garage for business or his hobby. Ms. Mays testified that Mr. Mays would do "a lot of his car repair over there"; that car repair was part of what Mr. Mays did for a living; that Mr. Mays kept most of his tools in his primary residence, not the garage; and that the garage stored car parts that Mr. Mays would sometimes sell. (ECF No. 34-1, PageID.548–50). Mr. Mays testified that he stored "[a] lot of car parts" and "tools and stuff" connected to his business in the garage. (*Id.* at PageID.351, 358). A reasonable jury could conclude that Mr. Mays used the garage to repair cars for his upselling business. But a reasonable jury could also conclude that Mr. Mays used the garage for personal and business storage, which may not exclude the structure from Coverage A.

That is, one case suggests that storing items connected to a business in a qualifying "other structure" does not necessarily constitute a business purpose. *See Keeth v. State Farm Fire and Casualty Co.*, No. 1:11-cv-141, 2012 WL 13018745, *13 (W.D. Mich. Mar. 29, 2012) (finding material dispute of fact existed as to whether storage of filters and grease for maintenance of commercial trucks

10

constituted business purpose). In reaching its decision, the court noted that "[t]he phrase 'business purpose' should not be read to mean all activities that a business conducts or otherwise engages in," but rather limited to "those activities for which the business holds itself out or promotes itself." *Id.* at *12. If the policy meant "to exclude from coverage any structure where any business activity occurs," it could have used the term "business activity." *Id.*

The fact that Coverage B restricts recovery for "property used or intended for use in a *business*" bolsters the argument that storage of business property does not affect coverage for the garage itself. (ECF No. 34-1, PageID.740). The restriction includes "merchandise held as samples or for sale or for delivery after sale." (*Id.*). It follows, then, that car parts held for sale would fall within the carve out. And it seems unreasonable to suggest that if the house itself burned down, the presence of some merchandise inside would disqualify the entire structure from coverage. Rather, the Coverage B carve-out implies that storage of business property is not necessarily a business purpose. The key distinction here is whether Mr. Mays' use of the garage crossed the line from business activity to a business purpose.

The facts here present a close call as to whether Mr. Mays used the garage to accomplish his upselling ends or merely for occasional business-related storage. Because the Court must construe all facts and inferences in favor of Plaintiffs, the Court finds that a reasonable juror could decide that Mr. Mays used his garage for

11

his car repair hobby and sometimes for upselling storage. And using a garage for business storage does not necessarily elevate its use to a business purpose. The Court will therefore deny summary judgment on this argument.

    **C.**    **The Policy Caps Plaintiffs' Ability to Recover for Business-Related Property.**

The Court will grant summary judgment that Plaintiffs' personal property claim under Coverage B is limited to non-business use personal property, and that a special limitation applies to business use property. (ECF No. 34, PageID.307). Coverage B's "Special Limits of Liability" restricts recovery for "property used or intended for use in a business" to $1,500. (ECF No. 34-1, PageID.740). That language is clear; to the extent Plaintiffs stored items in the garage that they used or sold as part of the upselling business, they can only recover up to $1,500 for the loss. In reaching its decision, the Court will reserve the determination of which items specifically are subject to the limitation to the appraiser. *See* Mich. Comp. Laws § 500.2833(1)(m) (setting forth appraisal process); *see also Auto-Owners Ins. Co. v. Kwaiser*, 190 Mich. App. 482, 488 (1991) ("The decision of the appraisers with regard to what particular articles or items of property are embraced within the general description of the property they are to appraise for damages is final and conclusive.").

12

\* \* \*

For the reasons given, the Court **ORDERS** that the motion for summary judgment (ECF No. 34) is **GRANTED IN PART AND DENIED IN PART**.

Dated: January 23, 2026        s/Robert J. White
                               Robert J. White
                               United States District Judge